UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| AURALEE ANN NICKELS,<br><br>    Plaintiff,<br><br>  vs.<br><br>ANDREW SAUL,<br><br>Commissioner, Social Security Administration,<br><br>    Defendant. | 5:18-CV-05069-DW<br><br><br>ORDER |

**INTRODUCTION**

On September 11, 2018, claimant Auralee Ann Nickels filed a complaint appealing the final decision of the Commissioner[1] of the Social Security Administration, finding her not disabled. (Doc. 1). The Commissioner denies claimant is entitled to benefits. (Doc. 5). The court issued a briefing schedule requiring the parties to file a joint statement of materials facts ("JSMF"). (Doc. 18). The Commissioner opposes the complaint in its entirety as well as the motion to reverse. (Doc. 22). For the reasons stated below, claimant's motion to reverse the decision of the Commissioner (Doc. 20) is granted.

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to FED. R. CIV. P. 25(d), Mr. Saul is automatically substituted for Nancy Berryhill as the defendant in all pending social security cases. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**FACTS AND PROCEDURAL HISTORY**

The parties' JSMF (Doc. 18) is incorporated by reference. Further recitation of the salient facts is incorporated in the discussion section of this order.

On June 5, 2015, Ms. Nickels filed an application for Social Security disability benefits alleging an onset of disability date of March 10, 2015. (Doc. 18 at ¶ 3). The claim was denied initially and on reconsideration when Ms. Nickels filed a written request for a hearing. Id. An evidentiary hearing was held on August 31, 2017. Id. at ¶ 4. On November 16, 2017, the ALJ issued a written decision denying benefits. Id. at ¶ 8. See also (AR at p. 15-31).[2] Ms. Nickels subsequently sought appellate review; her request was denied, making the decision of the ALJ final. (AR at p. 1). It is from this decision that Ms. Nickels timely appeals.

The issue before this court is whether the ALJ's decision of November 16, 2017, that Ms. Nickels was not "under a disability, as defined in the Social Security Act, from March 10, 2015, through [November 21, 2017]" is supported by substantial evidence on the record as a whole. (AR at p. 26). See also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001).

**STANDARD OF REVIEW**

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The

_____

[2] The court will cite to information in the administrative record as "AR at p. ___."

court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 901 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision "'merely because substantial evidence would have supported an opposite decision.'" Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI.  20 CFR § 416.920(a).  If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled.  Id.  The five-step sequential evaluation process is:

> (1) Whether the claimant is presently engaged in a "substantial gainful activity";  (2) whether the claimant has a severe impairment – one that significantly limits the claimant's physical or mental ability to perform basic work activities;  (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience);  (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143–44 (8th Cir. 1998).  See also Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits).  The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.  (AR at pp. 20-26).  At step three of the evaluation, the ALJ found that Ms. Nickels met or medically exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR at pp. 20-21).  At step four, the ALJ found Ms. Nickels could return to her previous light work as a general clerk and her previous sedentary work as a bookkeeper.  (AR at pp. 21-25).  Thus, the ALJ found that Ms. Nickels is not disabled.  (AR at p. 26).

**DISCUSSION**

Ms. Nickels identifies the following issues: (1) whether the ALJ improperly placed great weight on the testimony of Dr. Whittle and Dr. Erickson, despite their lack of consideration of subsequent medical treatment; (2) whether the ALJ improperly excluded the third hypothetical posed to the vocational expert; (3) whether the ALJ improperly rejected the testimony of Ms. Nickels and her spouse; and (4) whether the case should be reversed and benefits be allowed.

**STEP ONE**

At step one, the ALJ determined claimant "had not [been] engaged in substantial gainful activity since March 10, 2015, the alleged onset date" of disability. (AR at p. 20).

**STEP TWO**

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 CFR § 404.1520(c). A medically determinable impairment can only be established by an acceptable medical source. 20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians. Id. "It is the claimant's burden to establish that [his] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

The regulations describe "severe impairment" in the negative. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

20 CFR § 404.1521(a).  Additionally, an impairment is not severe if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  Kirby, 500 F.3d at 707. Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities.

The ALJ found Ms. Nickels suffered from the following severe impairment: cervical and lumbar degenerative disc disease and sacroiliac joint disfunction.  (AR at p. 20).

**STEP THREE**

At step three, the ALJ must determine whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirements of 20 CFR § 404.1509, the claimant is considered disabled.  A claimant has the burden to show that his impairment meets all of the listing's specified medical criteria.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id.  "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present *medical findings* equal in severity to all the criteria for the one most similar listed impairment."  Id. at 531 (emphasis added).

6

At this step the ALJ determined plaintiff's severe impairments did not meet or equal a listing under Appendix 1. (AR at p. 21). Ms. Nickels does not challenge this finding. (Doc. 21).

**STEP FOUR**

Before considering step four of the evaluation process, the ALJ must determine a claimant's residual functioning capacity ("RFC"). 20 CFR §§ 404.1520(a)(4)(iv) & 404.1545. RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from his impairments. 20 CFR § 404.1545(a)(1). In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe. 20 CFR § 404.1545(e). All of the relevant medical and non-medical evidence in the record must be considered. 20 CFR § 404.1513.

In determining a claimant's RFC, the ALJ considers any medical opinions and claimant's degree of functional limitation. 20 CFR § 404.1545(a)(1), (4). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis, and prognosis, and what [claimant] can still do despite the impairment(s), and . . . physical or mental restrictions." 20 CFR § 404.1527(b). In weighing medical opinion evidence, the ALJ must consider the factors set forth in the regulations. 20 CFR § 404.1527(c). An ALJ is not required to discuss every piece of evidence, and his failure to cite specific evidence does not mean he did not consider it. Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).

"The ALJ is in the best position to determine the credibility of the testimony and is granted deference in that regard." Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001) (referencing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)). "Where adequately explained and supported, credibility findings are for the ALJ to make." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). The court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation marks and citations omitted). The court will not disturb the decision of an ALJ who seriously considers but for good reason expressly discredits a claimant's subjective complaints. See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).

Here, the ALJ concluded Ms. Nickels's RFC permitted her "to perform light work."[3] (AR at p. 21). The ALJ found Ms. Nickels can walk and/or stand for about four hours in an eight-hour workday; she can sit for six hours in an eight-hour workday; she can change positions every one to two hours for a few minutes at a time while staying on task; she can occasionally push/pull with

---

[3] "Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting more of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 CFR § 404.1567(b).

her lower extremities bilaterally; she can occasionally balance, climb ramp/stairs, climb ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl; and she should avoid moderate exposure to hazards such as unprotected heights, dangerous machinery, and wet/slippery/uneven surfaces, with only rare exposure. (AR at p. 21).

To arrive at this conclusion, the ALJ made a credibility determination of Ms. Nickels's submissions and testimony and considered the opinions of physical disability determination examiners, Dr. Kevin Whittle, and Dr. Gregory Erickson. (AR at p. 22-23).

**Medical History**

The court has carefully reviewed the administrative record and gleans the following from the medical records. Ms. Nickels was involved in a motor vehicle accident on October 15, 2014. (AR. at pp. 384-392). She went to Black Hills Urgent Care the following day and reported sharp, constant lower back pain. Id. She reported no similar problems in the past. Id. X-rays of the thoracic spine revealed no evidence of fracture, vertebral bodies appeared normal in height and alignment, and soft tissues were unremarkable. Id. A referral was made for Ms. Nickels for physical therapy. Id.

Ms. Nickels underwent physical therapy at Hansen Physical Therapy for approximately two months. (AR at pp. 399-450). Initially, she reported her pain as a 10 out of 10, she was unable to walk for any distance without pain, unable to stand at all without pain, and unable to sit at all without pain. (AR at p. 400). The last progress note, dated December 5, 2014, noted that Ms.

Nickels reported pain as a 5 out of 10 (moderate pain), she was able to walk without significant pain for 20-30 minutes, able to tolerate sitting for 45 minutes or less without aggravating pain, and able to stand for 30 minutes or less without aggravating pain.  (AR at pp. 447-449).

During this same time period, Ms. Nickels treated with Dr. Peter Vonderau of The Rehab Doctors.  A lumbar MRI study dated November 22, 2014, revealed a diffuse disc bulging at L4/5 and L5/S1 with grade 1 spondylolisthesis at L5/S1 and old pars fractures.  (AR at p. 494).  Dr. Vonderau explained to Ms. Nickels that the lumbar spine changes "undoubtedly preceded the accident but are now symptomatic as a result of the collision."  Id.  He noted that Ms. Nickels was only receiving modest benefits from physical therapy and recommended bilateral L4/5 and L5/S1 facet joint steroid injections.  Id.

Ms. Nickels underwent a series of injections over the next several months.  She reported improvement in her pain immediately following the injections, but the pain would return after approximately 30 days.  (AR at pp. 486-493).  In an effort to obtain longer term relief Dr. Vonderau recommended and ultimately performed bilateral L3, L4, and L5 medial branch blocks.  (AR at pp. 484-486).  Post procedure, on April 10, 2015, Ms. Nickels reported that the medial branch blocks did not give her any benefit.  She reported more discomfort following the procedure and being "back at her baseline."  (AR at p. 481).  As a result of the minimal benefit from conservative case, Dr. Vonderau

referred Ms. Nickels to Black Hills Orthopedic and Spine to obtain an opinion regarding surgical intervention.  Id.

On May 13, 2015, Ms. Nickels participated in a consultation at Black Hills Orthopedic and Spine with Dr. Rand Schleusener.  (AR at pp. 474-475). Dr. Schleusener concluded that she was not a candidate for surgery.  Id.

Dr. Vonderau referred Ms. Nickels for a second surgical opinion with Dr. Tim Watt.  (AR at pp. 1099-1100).  On August 20, 2015, Ms. Nickels participated in a neurosurgical consultation with PA James Richards from Dr. Watt's office.  (AR at pp. 539-545).  PA Richards noted that Ms. Nickels's pain was "a 3/10 everyday all day and can be as high as a 10/10."  Id.  Ms. Nickels's history of treatment and condition were summarized as follows:

> Auralee has been struggling with low back pain for about 10 months now. . . She has been in physical therapy 3 months; Dr. Vonderau stopped after he determined it was aggravating her symptoms. . . She has had multiple injections specifically a bilateral L4-4, L5-S1 facet injections on 12-11-14 which gave her 28 days of relief then again on 1-27-15 gave her 14 days of relief followed by bilateral L3, L4/ L5 medial branch block on 3-24-15 which gave her no relief.  At this point Dr. Vonderau has sent her to our office for failure of conservative treatment.  Her low back is a constant, dull ache 3 out of 10 increasing at times.  She has no radicular leg pains but complains about intermittent bilateral leg weakness.  Her legs just bother her and feel like they are almost going to give out.  Her activities of daily living are affected.  She had to quit her job due to the discomfort.  She has not really been able to drive her very well. She can't ride a motorcycle or use a tractor; they all cause her discomfort. . . She is having disruption of sleep.

(AR at p. 539).  PA Richards noted that Ms. Nickels had significant degeneration at L5-S1 and would likely need surgical intervention.  Id.  Dr. Watt, in a follow-up consult visit on October 1, 2015, discussed surgery

options with Ms. Nickels, and it was decided that a L4-5 and L5-S1 PLIF fusion would be performed by Dr. Watt. (AR at pp. 536-538).

Dr. Watt performed the L4-S1 lumbar fusion surgery on November 11, 2015. In her post-op follow up visit on December 12, 2015, the examining PA observed that Ms. Nickels was able to stand from a seated position without using her arms, though she was a bit stiff. The films revealed good alignment, the interbody grafts and hardware were in good position and fusion appeared to be maturing satisfactorily. (AR at pp. 562-565). Ms. Nickels reported "quite a bit of discomfort and aching sensation into her low back and bilateral buttocks," and discussion were made to adjust her medication regimen. Id.

On December 9, 2015, Ms. Nickels reported to her physical therapist, Dawn Ellis, not being able to sleep for days with her pain being a 7 out of 10. (AR at pp. 596-597). On December 17, 2015, PT Ellis objectively noted minimal to moderate pain behaviors with transfers and bed mobility, as well as, a mild antalgic gait with decrease step length on the left. (AR at p. 592). The physical therapist documented improvement of Ms. Nickels's condition from the end of December 2016 until mid-January 2016. (AR at pp. 582-591).

In a post-surgery follow visit on January 19, 2016, PA Richards noted,

> Auralee is doing very well. She is happy with the outcome of her surgery. She realizes it is going to take time to heal. She is doing her physical therapy and tolerating that well. She is not taking any pain medications at this time other than some Ultram in the evening.

(AR at pp. 557-560). Dr. Watt reviewed the plain films and again noted the alignment and grafts were in good position, bone appeared to be maturing in, no motion across the fusion, and no abnormal motion above the fusion. Id.

On February 10, 2016, Ms. Nickels reported being able to sleep for about 4-5 hours before needing to reposition because of increase in pain. (AR at pp. 580-583). On February 18, 2016, Ms. Nickels's physical therapist called PA Richards to relay concerns that Ms. Nickels had developed some SI dysfunction on the right. PA Richards referred Ms. Nickels back to Dr. Vonderau for a right sacroiliac joint steroid injection, which was performed on March, 22, 2016. (AR at pp. 919). Over the next several months, Ms. Nickels reported continuing discomfort bilaterally in the sacroiliac joint regions. She was treated with steroid injections which provided modest, but temporary relief. (AR at pp. 1139-1150).

As a result of Ms. Nickels's reoccurring SI pain, she underwent a Left SI fusion on January 16, 2017, by Dr. Robert Woodruff. (AR at pp. 1200-1212). In a two-week post operation follow up, Ms. Nickels reported that she was much better than she was before surgery, but was still having some pain. (AR at pp. 1049-1051). She said the pain was different then what she was experiencing before the surgery. Id. A review of the x-ray showed well seated implants with no loosening in the left SI joint. Id.

Following the left SI joint fusion, Ms. Nickels was referred to physical therapy with Carey Berndt, PT. In her initial evaluation with PT Berndt on February 13, 2017, Ms. Nickels reported that she did great with the lumbar

fusion performed by Dr. Watt.  (AR at pp. 1053-1054).  She reported being
unable to sit or stand for longer than 30 minutes without pain starting.  PT
Berndt found instability on the right SI joint.  Id.

On April 14, 2017, in a three-month post operation appointment with Dr.
Woodruff, Ms. Nickels reported a 75%-80% improvement of her left side.  (AR at
pp. 63-65).  However, she reported catching and pain in her right hip.  Dr.
Woodruff noted that Ms. Nickels had contralateral right SI joint degeneration.
Id.

As of May of 2017, Ms. Nickels continued to have right SI joint pain, but
she had excellent relief as a result of the left sacroiliac joint fusion.  (AR at pp.
1154).  The right SI joint was initially treated with steroid injections, which
produced effective, but temporary relief.  (AR at p. 1062).  In a phone call with
Dr. Woodruff on May 23, 2017, Ms. Nickels discussed her desire to have a right
SI fusion.

Accordingly, a right SI joint fusion was performed on June 28, 2017, by
Dr. Woodruff.  (AR at pp. 1383-1394).  The following day, Ms. Nickels reported
the SI joint pain to be much improved.  (AR at p. 1394).  In a two-week post
operation follow up on July 11, 2017, Ms. Nickels reported that her pelvis felt
much more stable and overall she was happy with her progression.  She rated
her pain as 4-5 out of 10 on average.  (AR at pp. 1059-1061).  The x-rays
showed well seated implants with no loosening.  However, approximately two
weeks later, Ms. Nickels called Dr. Woodruff's office and stated that she was in

a lot of pain and was having a hard time sleeping; she was prescribed a Medrol dose pack. (AR at p. 1058).

Ms. Nickels presented to Dr. Woodruff on October 25, 2017, for a recheck of her lower back. (AR at pp. 75-78). While her left side continued to heal, Ms. Nickels was having sharp pains on the right side. The pain would go down the back of her legs bilaterally. She reported the pain as a 4-5 out of 10, but could be a 10-10. Dr. Woodruff noted that Ms. Nickels appeared moderately uncomfortable, but walked with a normal gait. She had limited range of her lumbar flexion and extension. Upon reviewing the x-rays, Dr. Woodruff noted that Ms. Nickels may have some loosening of the left S1 screw. Dr. Woodruff made a plan to see her back in two months. If she was not doing any better, he stated "it might be worth getting a CT scan to evaluate healing, implant placement, and implant loosening." Id.

## A.    The Opinions of Dr. Whittle and Dr. Erickson

Ms. Nickels claims the ALJ erred by placing great weight on the testimony of Dr. Whittle and Dr. Erickson in reaching the decision that Ms. Nickels had the residual capacity to perform light work. Specifically, Ms. Nickels argues that the opinions of Dr. Whittle and Dr. Erickson predate her ongoing and current treatment regime, and therefore, the opinions are based on outdated and incomplete information. (Doc. 21 at pp. 1-2). The Commissioner argues that the ALJ is not required to receive an updated report from a reviewing physician whenever new medical evidence is available. (Doc. 22 at p. 14). The Commissioner points out that the Social Security regulations

15

impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.  Id.

Dr. Kevin Whittle, a non-examining physical disability determination examiner, completed a report dated October 30, 2015, opining as to Ms. Nickels's residual functional capacity.  (AR at pp. 172-183).  Dr. Gregory Erickson, a non-examining physical disability determination examiner, completed a report dated March 15, 2016.  (AR at pp. 185-198).  It appears that neither Dr. Whittle, nor Dr. Erickson reviewed any medical records after March 15, 2016.

This is significant because Ms. Nickels underwent extensive medical procedures and treatments after the disability examiner's opinions.  While Dr. Erickson had the benefit of the records through and after Dr. Watt's November 2016 lumbar fusion, he had no information regarding Ms. Nickels's continued pain and left sacroiliac joint fusion in January of 2017, as well as a right sacroiliac fusion in June of 2017.  The medical records discuss ongoing pain, as well as the treating physician's concern about possible implant loosening, post-surgery.  (AR at pp. 76-77).  The ALJ discussed the medical records from April of 2016 through May of 2017.  (AR at p. 23).  However, the opinion fails to discuss any of the records documenting Ms. Nickels's continuing pain complaints and findings of instability and limitations.  Id.  The ALJ's November 2017 opinion also fails to discuss the outcome of the June 2017 right SI joint fusion which took place two months before the hearing.  Id.  The medical

16

records and hearing testimony reflect that Ms. Nickels continued to report pain and limitations following the third surgery.

The court finds the ALJ erred by affording great weight to the opinion of the consulting state agency physicians. "[T]he opinion of a non-examining consulting physician is afforded less weight if the consulting physician did not have access to relevant medical records, including relevant medical records made after the date of evaluation." McCoy v. Astrue, 648 F.3d 605, 616 (8th Cir. 2011). Opinions without consideration of these records "fairly detracts from [the] decision" of the ALJ to adopt Dr. Whittle and Dr. Erickson's opinions. While the Commission is correct that there will always be some time lapse between the consultants' report and the ALJ's review, it is not merely the passage of time which is the court's consideration; it is the fact that Ms. Nickels underwent three surgeries during that time frame and consistently complained of continuing pain and limitations following the surgeries.

Because the court finds reversible error in the ALJ placing great weight in the opinions of Dr. Whittle and Dr. Erickson, which fail to consider all of Ms. Nickels's surgical intervention and results thereof, it need not address the credibility determinations of the ALJ as to Ms. Nickels, the lack of discussion regarding Ms. Nickels's husband's credibility, or the lack of discussion regarding the third hypothetical.

**ORDER**

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Doc. 20) is granted. It is further

ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for rehearing consistent with this decision.

DATED this 31st day of March, 2020.

BY THE COURT:

DANETA WOLLMANN
UNITED STATES MAGISTRATE JUDGE